[No. A054823. First Dist., Div. Five. Aug. 12, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE DEWBERRY, Defendant and Appellant.

**COUNSEL**

Barry K. Newman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KING, J.—In this case—a prosecution for child detention without a court order (Pen. Code, § 277)—we hold the trial court erred in instructing the

jury that the defendant had the burden of proving the defense of necessity by a preponderance of the evidence, because lack of necessity is an element of the offense as to which the defendant only had to raise a reasonable doubt. We reverse the judgment of conviction.

George Dewberry lived with his girlfriend Laurie between August and December 1988, during which time she became pregnant with their child. On June 18, 1989, while Laurie and Dewberry were separated, she gave birth to David. She subsequently returned with David to living with Dewberry.

On October 29, 1989, Laurie and Dewberry argued. She said she wanted to leave and asked if she could take David, but Dewberry said she could not. She had previously threatened to take David and never allow Dewberry to see him. Laurie left, but she returned later with a friend, a "biker type" named "Big Wayne." A heated argument ensued. Laurie summoned the police, who responded but said they could not intervene because there was no custody order. Laurie and Big Wayne left without David. Just before they left, Big Wayne threatened to inflict serious bodily injury on Dewberry. Later that day, two other friends of Laurie went to Dewberry's home intending to beat him up, but they subsequently told Laurie that they had only talked to him. When Laurie returned that evening to retrieve some clothing, she saw Dewberry with an open suitcase.

Laurie again returned the following morning. Dewberry and David were gone. She found a letter to her from Dewberry stating he was "leaving town with David" and "going where we'll both be safe," and "[y]ou scared me when you got everybody involved like Big Wayne." Laurie eventually discovered that Dewberry had taken David to Texas, where Dewberry's mother lived.

In November 1989, Laurie initiated custody proceedings in Solano County. She was awarded custody of David. Dewberry was arrested in Texas in October 1990 and was extradited in January 1991. He did not reveal David's whereabouts until trial.

At trial, Dewberry testified he had taken David to Texas out of fear for the safety of himself and David, due to the threats from Laurie's friends, his concern that Laurie would take David to a home "full of drugs and alcohol," and Laurie's violent temper. A friend of theirs testified that Laurie has "a very strong temper" and "flies off in rages," and Dewberry appeared to be "a little frightened" on October 29, 1989. Laurie admitted that Dewberry appeared to be genuinely scared that day.

A jury convicted Dewberry of child detention without a court order (Pen. Code, § 277). The court denied a new trial motion which had been based on

juror misconduct, suspended imposition of sentence, and placed Dewberry on three years probation on the condition he serve 421 days in county jail, the amount of time he had already served to date.

The defense in this case was necessity, i.e., that Dewberry took David to Texas in the belief it was necessary to protect the child from harm. The pivotal question is whether such necessity was an affirmative defense which Dewberry had to prove by a preponderance of the evidence, or whether its absence was an element of the offense as to which Dewberry merely had to raise a reasonable doubt.

Penal Code section 277 provides in pertinent part, "In the absence of a court order determining rights of custody or visitation to a minor child, every person having a right of custody who maliciously takes, detains, conceals, or entices away that child within or without the state, *without good cause*, and with the intent to deprive the custody right of another person or a public agency also having a custody right to that child," is guilty of a criminal offense. (Italics added.) The statute defines "good cause," in pertinent part, as "a good faith and reasonable belief that the taking, detaining, concealing, or enticing away of the child is necessary to protect the child from immediate bodily injury or emotional harm."

The trial judge instructed the jury that the absence of good cause was an element of the offense. However, the court also instructed the jury that necessity was an affirmative defense which Dewberry had the burden of proving by a preponderance of the evidence. Dewberry contends the latter instruction was error and improperly increased his burden of raising a reasonable doubt as to an element of the offense.

The pertinent legal standards are well settled. ■  On the one hand, when a defendant presents a factual contention to negate an element of the charged offense, the defendant need only raise a reasonable doubt as to the existence or nonexistence of that element. (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963 [127 Cal.Rptr. 135, 544 P.2d 1335].) ■  On the other hand, a defendant has the burden of establishing the affirmative defense of necessity by a preponderance of the evidence. (*People* v. *Waters* (1985) 163 Cal.App.3d 935, 937 [209 Cal.Rptr. 661]; *People* v. *Condley* (1977) 69 Cal.App.3d 999, 1013 [138 Cal.Rptr. 515].) The question is whether Dewberry's claim of necessity was an affirmative defense or went to an element of the offense.

■  On its face, Penal Code section 277 appears to convert what would normally be an affirmative defense—the claim of belief in the necessity to

protect the child from harm—into an element of the offense. This is accomplished by a device which is very unusual in the Penal Code, the specification of lack of "good cause" for the proscribed conduct within the statutory description of the crime. The drafters of CALJIC have concluded the absence of good cause is an element of the offense. (CALJIC No. 9.70.5 (5th ed. pocket pt.) p. 182.) We agree.

This conclusion is borne out by an analogy to Penal Code section 270, which, like section 277, includes lack of a legal excuse within the statutory description of the crime. Section 270 makes it a criminal offense "[i]f a parent of a minor child wilfully omits, *without lawful excuse*, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child . . . ." (Italics added.) The absence of lawful excuse is an element of the offense. (See CALJIC No. 16.150 (5th ed. 1988); 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 832, p. 947.) Section 270 relaxes the prosecutor's burden by creating a presumption of no lawful excuse upon proof of abandonment, desertion or failure to provide. (Pen. Code, § 270; see *People* v. *Johnson* (1968) 258 Cal.App.2d 705, 708 [66 Cal.Rptr. 99].) This presumption imposes on the defendant the burden of creating a reasonable doubt as to whether there was a lawful excuse for the failure to provide. (*People* v. *Crawford* (1962) 205 Cal.App.2d Supp. 858, 862 [23 Cal.Rptr. 566].)

If the absence of lawful excuse is an element of the offense prescribed by Penal Code section 270, then it logically follows that the absence of good cause is an element of the offense prescribed by section 277. ▉ Accordingly, in attempting to show good cause for taking David to Texas, Dewberry need only have raised a reasonable doubt on this point. (*People* v. *Tewksbury, supra,* 15 Cal.3d at p. 963.)

The court therefore erred in instructing the jury that Dewberry had to prove the affirmative defense of necessity by a preponderance of the evidence. The instruction was correct on its face, but it was inappropriate in this context because of the statutory conversion of the necessity issue into an element of the offense. The result was error because the instruction increased Dewberry's burden from raising a reasonable doubt as to good cause to proof of good cause by a preponderance of the evidence. (15 Cal.3d at p. 964.)

▉▉▉ The remaining question is whether the error was prejudicial.[1] The error was of constitutional dimension. (*People* v. *Tewksbury, supra,* 15 Cal.3d at p. 963.) The Attorney General contends any error was harmless

---

[1] In arguing the question of prejudice, Dewberry relies on a juror's posttrial declaration that he had "believed" the law imposed on Dewberry the burden of proving Laurie was an unfit

beyond a reasonable doubt (*Chapman* v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711-712, 87 S.Ct. 824, 24 A.L.R.3d 1065]) because, although there was evidence of threats to Dewberry, there was no evidence of danger to David.

But there was indeed evidence Dewberry had "a good faith and reasonable belief" (Pen. Code, § 277) that David was at risk. Dewberry testified he was afraid for David's safety because Laurie had a violent temper, she had "jerked him around before," and "if David made her mad, she could hurt him." Dewberry said Laurie had once "shoved [David] in my arms and told me, 'You better do something with him before I hurt him.'" The friend who testified as to Laurie's raging temper said she had seen Laurie shove David at Dewberry and tell him to "get rid of David before she does something to him." This testimony supported Dewberry's claim that he believed David was at risk, and might well have resulted in a finding of reasonable doubt as to good cause had the jury not been erroneously instructed on the burden of proving necessity by a preponderance of the evidence.

Dewberry also contends the court should have granted a new trial based on juror misconduct. Because the judgment must be reversed due to the instructional error, we need not address this claim.[2]

The judgment is reversed.

Haning, Acting P. J., and Hanlon, J.,* concurred.

---

mother "because of the jury instruction requiring the defendant to prove the defense of necessity by a preponderance of the evidence." This amounts to impeachment of a jury verdict with evidence of the juror's subjective reasoning process, which is impermissible. (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349-350 [78 Cal.Rptr. 196, 455 P.2d 132]; see Evid. Code, § 1150.)

[2]Our reversal, based upon legal principles, does not mean we condone Dewberry's conduct. Whether Dewberry has violated Penal Code section 277 must be determined by a properly instructed jury. It is certainly clear that his use of self help to deprive his four-month-old baby of all contact with the child's mother for more than a year is contrary to the child's best interest. Whatever the claimed justification, Dewberry's failure to recognize that his deprivation of his son of all maternal contact at such a crucial stage of development would permanently harm his child justifies the most severe condemnation. Dewberry should have requested custody in the domestic relations court and sought those limitations on the mother's contact with the child which the evidence would demonstrate would be in the best interest of the child.

*Judge of the San Francisco Superior Court sitting under assignment by the Chairperson of the Judicial Council.