[No. C037300. Third Dist. Sept. 4, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
MAHER MEHAISIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

## Counsel

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALLAHAN, J.**—Defendant Maher Mehaisin was charged with withholding his six-year-old daughter and his four-year-old son from their lawful custodian, their mother. (Pen. Code, § 278.5; further undesignated statutory references are to the Penal Code.) In the published portion of this opinion, we hold defendant's offer of proof of an affirmative defense of necessity was properly rejected as insufficient. (§ 278.7.) In the unpublished portion of the opinion, we hold that defendant's offer of proof of a nonstatutory justification or excuse for withholding the children was properly rejected.

A jury convicted defendant of abducting his daughter and son. (§ 278.5.) He was sentenced to state prison for three years, eight months.

On appeal, defendant contends the trial court erred by excluding evidence (1) establishing a necessity defense under section 278.7, and (2) explaining why he kept the children from their mother's home. We shall affirm the judgment.

### FACTS

In 1992, defendant and Jihan Mehaisin were married in Amman, Jordan, the home of defendant and his parents. Their daughter, Jewmanna, was born in Sacramento in 1993. Their son, Mohammad, was born in Sacramento in 1994. In 1996, the family moved to Mississippi, where defendant operated a boutique clothing store.

In October 1997, Jihan and the children moved back to Sacramento and lived with her sister. In December 1997, defendant filed for divorce in Mississippi. Both parties were present and represented by counsel when a Mississippi court entered an order awarding Jihan temporary custody of the children, granting defendant visitation from January 3, 1998, through January 16, 1998, and scheduling the divorce hearing for January 28, 1998.

In early January 1998, the divorce hearing was continued to March 5, 1998. Defendant was granted additional time for visitation, until February 2, 1998. In accordance with that award, defendant arrived at Jihan's sister's apartment in Sacramento to pick up the children. Defendant told Jihan that

he needed the children's passports because they needed identification on the flight. Jihan's sister, who was present, told Jihan not to give him the passports. However, after calling Southwest Airlines and being told that picture identification was required for the children, Jihan gave defendant the passports. At the time, the children were three and five years old.

On February 2, 1998, defendant failed to return the children. Jihan's sister telephoned his parents' residence in Amman, Jordan, to obtain his home telephone number in Mississippi. Unexpectedly, Jewmanna answered the telephone. She cried and told her aunt that she wanted to come home. Defendant snatched the telephone from Jewmanna and got on the line. When questioned, defendant stated he had no intention of bringing the children back to the United States. Jihan made no attempt to visit her children in Jordan, because she feared for her life if she returned there. She testified, "There is no woman [*sic*] rights. They can kill me and get away with it."

On March 28, 1998, Jihan placed another call to defendant's parents' residence in Jordan. She asked defendant to return the children, and he refused. She confronted him with the court's custody order, and he told her he "didn't care about the laws here."

Defendant later returned to the United States. In July 1998, he went to New Orleans, Louisiana, where he stayed long enough to obtain citizenship papers. He then went to Chicago, Illinois, where he obtained return tickets to Jordan. In August 1999 he was arrested and extradited to California.

Defendant testified that Jihan was unfaithful to him. He claimed she was a drug user and a drunk.

DISCUSSION

I

Defendant contends the trial court erred by excluding evidence and argument supporting a necessity defense under section 278.7. He claims the exclusion of evidence that he kept the children because he believed they would suffer harm in Jihan's home violated his federal due process rights. We are not persuaded.

*Background*

Defendant moved in limine to present a necessity defense pursuant to section 278.7. He proffered evidence that (1) Jihan's brother was living at

her residence during 1997; (2) he had been arrested for a sexual assault, although the charge was not sustained; and (3) he used controlled substances. Defendant intended to argue that he withheld the children to protect them, because he reasonably believed they would suffer harm in Jihan's home.

The trial court ruled defendant was not entitled to a necessity defense because he did not comply with section 278.7's notice provisions. The court instructed the jury: "As I previously advised you, a defendant accused of a violation of Penal Code Section 278.5 may present a defense that his conduct was necessary because of a belief a child was in danger only if such defendant complies with procedures which require him to notify certain authorities and take action with the courts within a reasonable time after a wrongful taking or withholding of a child. [¶] Because this defendant had not complied with the requirements to notify proper authorities nor to take proper court actions, any claim by him of dangers to a child are not a defense nor relevant to this case . . . and you are, again, admonished to disregard any testimony about such alleged danger to the children."

*Analysis*

Defendant was convicted of violation of section 278.5, which provides in relevant part: "(a) Every person who takes, entices away, keeps, withholds, or conceals a child and maliciously deprives a lawful custodian of a right to custody, or a person of a right to visitation, shall be punished . . . ."

A necessity defense to section 278.5 is set forth in section 278.7, which provides in relevant part:

"(a) Section 278.5 does not apply to a person with a right to custody of a child who, with a good faith and reasonable belief that the child, if left with the other person, will suffer immediate bodily injury or emotional harm, takes, entices away, keeps, withholds, or conceals that child.

"(b) Section 278.5 does not apply to a person with a right to custody of a child who has been a victim of domestic violence who, with a good faith and reasonable belief that the child, if left with the other person, will suffer immediate bodily injury or emotional harm, takes, entices away, keeps, withholds, or conceals that child. 'Emotional harm' includes having a parent who has committed domestic violence against the parent who is taking, enticing away, keeping, withholding, or concealing the child.

"(c) The person who takes, entices away, keeps, withholds, or conceals a child shall do all of the following:

"(1) Within a reasonable time from the taking, enticing away, keeping, withholding, or concealing, make a report to the office of the district attorney of the county where the child resided before the action. The report shall include the name of the person, the current address and telephone number of the child and the person, and the reasons the child was taken, enticed away, kept, withheld, or concealed.

"(2) Within a reasonable time from the taking, enticing away, keeping, withholding, or concealing, commence a custody proceeding in a court of competent jurisdiction consistent with the federal Parental Kidnapping Prevention Act . . . or the Uniform Child Custody Jurisdiction Act . . . .

"(3) Inform the district attorney's office of any change of address or telephone number of the person and the child."[1]

Defendant was not entitled to a defense under section 278.7, subdivision (a) or (b), because he was not a person "with a right to custody of a child" within the meaning of those subdivisions.

For purposes of section 278.7, the phrase "right to custody" means the right to physical care, custody, and control of the child pursuant to a custody order. (§ 277, subd. (e).) A custody order may be permanent or temporary. (§ 277, subd. (b).) "Visitation" means time for access to the child allotted to any person by court order. (§ 277, subd. (h).)[2]

Defendant contends that, because he was granted so much time for overnight visitation between January 3, 1998, and February 2, 1998, he

---

[1]Section 278.7 was enacted in 1996. (Stats. 1996, ch. 988, § 9.)

[2]Section 277 provides in relevant part:
"The following definitions apply for the purposes of this chapter: [¶] . . . [¶]
"(b) 'Court order' or 'custody order' means a custody determination decree, judgment, or order issued by a court of competent jurisdiction, whether permanent or temporary, initial or modified, that affects the custody or visitation of a child, issued in the context of a custody proceeding. An order, once made, shall continue in effect until it expires, is modified, is rescinded, or terminates by operation of law. [¶] . . . [¶]
"(e) A 'right to custody' means the right to the physical care, custody, and control of a child pursuant to a custody order as defined in subdivision (b) . . . . [¶] . . . [¶]
"(h) 'Visitation' means the time for access to the child allotted to any person by court order."

effectively had "physical care, custody, and control" of the children during the period and thus had a "right to custody" within the meaning of section 277, subdivision (e).[3] We do not agree.

Courts "look[] at the existing de facto arrangement between the parties to decide whether physical custody is truly joint or whether one parent has sole physical custody with visitation rights accorded the other parent." (*In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 759-760 [76 Cal.Rptr.2d 717].) Joint physical custody exists where "each of the parents . . . have significant periods of physical custody." (Fam. Code, § 3004.) Because defendant had the children for several weeks, his period of physical custody must be deemed significant. (Contrast *Biallas, supra*, at pp. 758, 760 [custody one day per week and alternate weekends constitutes liberal visitation, not joint custody]; *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 142 [61 Cal.Rptr.2d 559] [same].) However, with exceptions not relevant here, joint physical custody must be "shared by the parents in such a way so as to assure a child of frequent and continuing contact with both parents." (Fam. Code, § 3004.) Thus, where children "shuttle[] back and forth between two parents" (*In re Marriage of Whealon, supra,* at p. 142) so that they spend nearly equal times with each parent, or where the parent with whom the child does not reside sees the child four or five times a week, this amounts to joint physical custody. (*In re Marriage of Lasich* (2002) 99 Cal.App.4th 702 [121 Cal.Rptr.2d 356]; *Biallas, supra*, at p. 760; *Brody v. Kroll* (1996) 45 Cal.App.4th 1732, 1735-1736 [53 Cal.Rptr.2d 280]; *In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1342 [33 Cal.Rptr.2d 871].) Here, however, the Mississippi court's order did not purport to assure frequent or continuing contact with both parents. (Fam. Code, § 3004.) Rather, it gave defendant *a single period* of exclusive physical contact (unless Jihan traveled to Mississippi) and gave Jihan exclusive custody thereafter. Thus, the de facto arrangement between the parents was sole custody and one period of liberal visitation, not joint physical custody.

In any event, defendant absconded with the children *after* his period of visitation ended, not *during* the period. Assuming, for purposes of argument, that defendant had joint physical custody of the children until February 2, 1998, his right to custody ended on that date and section 278.7 provides no defense to his withholding of the children thereafter.[4]

---

[3]We obtained supplemental briefing on this issue.

[4]The complaint, deemed an information, alleged defendant withheld the children between February 2, 1998, and May 8, 2000.

Moreover, the trial court properly held that defendant was not entitled to a section 278.7 defense because he did not report the taking to the Sacramento District Attorney and did not commence a custody proceeding in a court of competent jurisdiction. (§ 278.7, subd. (c).)

Section 278.7 is silent as to whether a person claiming the defense must comply with its reporting provisions, or in other words, whether the reporting provisions are conditions of the statutory defense. However, before the enactment of section 278.7, the common law necessity defense "require[d] the individual committing the crime to report to the proper authorities immediately after attaining a position of safety from the peril." (*People v. Beach* (1987) 194 Cal.App.3d 955, 972 [240 Cal.Rptr. 50], citing *People v. Lovercamp* (1974) 43 Cal.App.3d 823, 831-832 [118 Cal.Rptr. 110, 69 A.L.R.3d 668] [report to authorities is a "condition" of the necessity defense].)

Our examination of section 278.7's legislative history reveals no dissatisfaction with, or intent to change, the common law in this respect.[5] Contrary to defendant's argument, the Legislature does not appear to have intended merely to "create a safe haven, so that a parent who complies with [the notice] provisions will not even be charged with child abduction," whereas "a person who does not comply with the notification provisions must prove that he or she acted with a good faith and reasonable belief that the child may suffer harm." The trial court properly construed section 278.7 consistent with its common law antecedent and properly concluded that defendant was not entitled to the statutory defense.

Defendant claims due process entitled him to present evidence of, and have the jury instructed upon, any recognized defense to the charge against him. (E.g., *Mathews v. United States* (1988) 485 U.S. 58, 63, 66 [108 S.Ct. 883, 886-887, 889, 99 L.Ed.2d 54, 61, 63]; *People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, 596-600 [237 Cal.Rptr. 654].) Our conclusion that his defense was not recognized pursuant to section 278.7 makes further consideration of the due process claim unnecessary.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[5]The People's motion for judicial notice of section 278.7's legislative history is granted. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

*See footnote, *ante,* page 958.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 20, 2002.