[No. S133798. Nov. 20, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM NEIDINGER, Defendant and Appellant.

## COUNSEL

Victor S. Haltom for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez, Ruth M. Saavedra, Janet Neeley, Stephen G. Herndon and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Penal Code section 278.5 provides in subdivision (a) that it is a crime when a person "takes, entices away, keeps, withholds, or conceals a child and maliciously deprives a lawful custodian of a right to custody, or a person of a right to visitation . . . ."[1] Section 278.7, subdivision (a) (section

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

278.7(a)), provides, however, that section 278.5 does not apply to a person who has a right to custody of the child and acts "with a good faith and reasonable belief that the child, if left with the other person, will suffer immediate bodily injury or emotional harm . . . ." This case requires us to examine the relationship between these two provisions. We conclude that the defendant bears the burden of raising a reasonable doubt regarding whether section 278.7(a) applies. Because the trial court instructed the jury that defendant had to prove section 278.7(a)'s facts by a preponderance of the evidence, and because the error was prejudicial, we affirm the judgment of the Court of Appeal, which had reversed the trial judgment.

## I.  Facts and Procedural History

We take these facts largely from the Court of Appeal opinion. Defendant, William Neidinger, and Olga Neidinger (Olga) were married in 1998. They have two children, a son born in October 1998, and a daughter born in November 1999. As the Court of Appeal describes it, "The relationship between defendant and Olga was tumultuous; they had many arguments that escalated to physical altercations. Olga and defendant each claimed the other was the aggressor. Olga testified defendant was physically abusive; defendant testified that Olga became quite angry after the birth of [their daughter], and would take out her aggressions by hitting him or damaging his personal property." Eventually, after one altercation, Olga and the children moved into an apartment in West Sacramento. On September 5, 2001, at Olga's request, the Sacramento County Superior Court issued an order restraining defendant from contacting Olga or the children.

In December 2001, Olga filed a petition for legal separation. Later, the court granted Olga and defendant joint legal and physical custody of the children and gave defendant supervised and then unsupervised visitation rights. Pursuant to stipulation, the custody order was modified on February 21, 2002. The new order granted Olga and defendant joint legal custody with primary physical custody to Olga.[2] Defendant was granted visitation with the children on each Saturday and Sunday from 9:00 a.m. to 7:00 p.m.

Defendant testified that after he began to see the children more frequently, he became concerned about their well-being, as they had regressed into a

---

[2] As the Court of Appeal explained, it is unclear what the stipulation and order meant by "primary physical custody." The provisions in the Family Code governing custody of children do not use that term. (See *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1081, fn. 1 [12 Cal.Rptr.3d 356, 88 P.3d 81]; *In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 945, fn. 2 [126 Cal.Rptr.2d 45].) The Attorney General implicitly agrees that defendant had a right to custody of the children within the meaning of section 278.7(a), and we express no opinion on the point.

state of near autism. They were lethargic, detached, and almost catatonic. He said he made over 20 complaints to child protective service agencies about the children's well-being without receiving a satisfactory response. Defendant's concern culminated in an incident on March 5, 2002, that, he testified, caused him to decide to take the children from Olga's care for their own safety. During this time, defendant was trying to conclude all court proceedings in California and to initiate a new proceeding in Nevada because, he testified, "[n]obody was living in Sacramento whatsoever," and he had maintained his residency in Nevada even after he had moved to Sacramento to complete a job. On March 7, 2002, defendant filed an application in a Nevada court for an order for protection against domestic violence.

Defendant picked up his children for his regular visitation on Saturday, March 9, 2002. He testified he drove to the police station in West Sacramento to inform them of his plans to remove the children, but the station was closed. A woman in civilian clothes told him that the police did not get into such matters and did not care. Through third parties, he communicated to Olga that he would not return the children because he had moved to Nevada, which would be a better place for them. Olga called the police. While a police officer was interviewing her, defendant telephoned her. He told her that he had an order granting custody issued by a Nevada court on March 8, 2002, but he declined to fax a copy of the order to the officer.

Officer Ricky Gore, the investigating officer, left a message on defendant's cellular telephone the evening of March 9, 2002, to which defendant replied with a lengthy message of his own. Officer Gore testified that defendant said he was fed up with the California court system; he had "gotten rid" of all actions in California; he had tried, unsuccessfully, to serve Olga with court papers; and the children were safe. Officer Gore returned defendant's call the next morning, and defendant reiterated the concerns he had stated in his earlier message. The day after that, Monday, March 11, 2002, Officer Gore again spoke with defendant by telephone, who reiterated his frustration with the California courts and said he was concerned about his children's welfare. Defendant said he would not return the children to California, but he agreed to fax the Nevada court order to Officer Gore. Officer Gore obtained an arrest warrant for defendant, and Nevada police arrested him later that same day while he was faxing the Nevada order to Officer Gore.

Defendant was charged with two counts of maliciously depriving a lawful custodian of the right to custody of a child in violation of section 278.5, subdivision (a), one count for each of the two children.[3] At trial, defendant

---

[3] Some courts call the crime "child abduction," after the chapter of the Penal Code of which section 278.5 is a part. However, that chapter also defines other similar crimes that could go by

claimed that he had a reasonable and good faith belief that removal of the children from Olga's care was necessary for their physical and emotional well-being under section 278.7(a). The court instructed the jury on this defense. As part of this instruction, the court told the jury that defendant had the burden of proving the facts necessary to establish this defense by a preponderance of the evidence.

The jury found defendant guilty on both counts. The trial court suspended imposition of sentence and placed defendant on probation for four years on the condition that he serve 240 days in jail and have no contact with Olga and the children.

Defendant appealed. He argued that the trial court erred in imposing on him the burden of proving section 278.7(a)'s factual requirements by a preponderance of the evidence. The Court of Appeal held that the preponderance-of-the-evidence instruction was proper. But it also held that the trial court erred by not additionally giving an instruction "which clarified the relationship between the good faith defense and the element of malice, so that it was clear to the jury that, to the extent the evidence regarding the good faith defense also showed that defendant acted without malice, he need raise only a reasonable doubt as to that element of the offense." It found the error prejudicial and reversed the judgment.

We granted the Attorney General's petition for review.

## II. Discussion

In criminal cases, it is well settled, indeed, virtually axiomatic, that the prosecution has the burden of proof beyond a reasonable doubt. (E.g., *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068]; § 1096.) Accordingly, in this case, the prosecution had the burden of proving beyond a reasonable doubt every element of the crime stated in section 278.5, subdivision (a). No one questions this basic proposition. But it is constitutionally permissible to place on the defendant the burden of proving affirmative defenses by a preponderance of the evidence, as long as the defendant is not required to negate an element of the offense. (*Dixon v. United States* (2006) 548 U.S. ___ [165 L.Ed.2d 299, 126 S.Ct. 2437] [interpreting federal statutes as requiring defendant to prove duress by a preponderance of the evidence]; *Martin v. Ohio* (1987) 480 U.S. 228 [94 L.Ed.2d 267, 107 S.Ct. 1098] [Ohio law may permissibly require defendants charged with murder to prove

---

the same name. Accordingly, for simplicity, at least one Court of Appeal has called this crime "child detention." (*People v. Moses* (1996) 43 Cal.App.4th 462, 465, fn. 2 [50 Cal.Rptr.2d 665].)

self-defense by a preponderance of the evidence]; *Moss v. Superior Court* (1998) 17 Cal.4th 396 [71 Cal.Rptr.2d 215, 950 P.2d 59] [person charged with criminal contempt for failure to comply with a child support order must prove inability to comply with the order by a preponderance of the evidence].)

In this case, defendant was convicted of violating section 278.5, subdivision (a), which provides: "Every person who takes, entices away, keeps, withholds, or conceals a child and maliciously deprives a lawful custodian of a right to custody, or a person of a right to visitation," is guilty of a crime. At trial, he relied on section 278.7(a), which provides: "Section 278.5 does not apply to a person with a right to custody of a child who, with a good faith and reasonable belief that the child, if left with the other person, will suffer immediate bodily injury or emotional harm, takes, entices away, keeps, withholds, or conceals that child."[4]

We must decide how section 278.7(a)'s belief defense interacts with section 278.5. Specifically, we must decide who has the burden of proof regarding this belief, and what that burden is. Within limits, this is a question of state law. "[D]efining the elements of an offense and the procedures, including the burdens of producing evidence and of persuasion, are matters committed to the state." (*Moss v. Superior Court, supra,* 17 Cal.4th at p. 425, citing *Martin v. Ohio, supra,* 480 U.S. at p. 232 & *Patterson v. New York* (1977) 432 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319]; see also *Dixon v. United States, supra,* 548 U.S. at p. __ [126 S.Ct. at p. 2442].) There are, of course,

---

[4] Section 278.7 contains other subdivisions. Subdivision (c) of that section provides: "The person who takes, entices away, keeps, withholds, or conceals a child shall do all of the following:

"(1) Within a reasonable time from the taking, enticing away, keeping, withholding, or concealing, make a report to the office of the district attorney of the county where the child resided before the action. The report shall include the name of the person, the current address and telephone number of the child and the person, and the reasons the child was taken, enticed away, kept, withheld, or concealed.

"(2) Within a reasonable time from the taking, enticing away, keeping, withholding, or concealing, commence a custody proceeding in a court of competent jurisdiction consistent with the federal Parental Kidnapping Prevention Act . . . or the Uniform Child Custody Jurisdiction Act . . . .

"(3) Inform the district attorney's office of any change of address or telephone number of the person and child."

Subdivision (d) of section 278.7 provides: "For the purposes of this article, a reasonable time within which to make a report to the district attorney's office is at least 10 days and a reasonable time to commence a custody proceeding is at least 30 days. This section shall not preclude a person from making a report to the district attorney's office or commencing a custody proceeding earlier than those specified times."

We express no opinion regarding the meaning of these other subdivisions or how they interrelate with section 278.7(a). (See *People v. Mehaisin* (2002) 101 Cal.App.4th 958, 962–965 [124 Cal.Rptr.2d 683].)

limits on what the state may do in this regard. "[T]he state may not label as an affirmative defense a traditional element of an offense and thereby make a defendant presumptively guilty of that offense unless the defendant disproves the existence of that element." (*Moss v. Superior Court, supra,* at p. 426.) "Due process does not require that the state prove the nonexistence of a constitutionally permissible affirmative defense, however." (*Ibid.*) Defendant does not argue that section 278.7(a)'s good faith belief is a traditional element of an offense that cannot be made an affirmative defense. Accordingly, we turn to state law to decide these questions.

We recently decided similar questions regarding a different offense. (*People v. Mower* (2002) 28 Cal.4th 457 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*).) Mower was charged with possessing and cultivating marijuana in violation of Health and Safety Code sections 11357 and 11358. He relied on the defense established by Proposition 215, approved in 1996, entitled Medical Use of Marijuana. Specifically, Health and Safety Code section 11362.5, subdivision (d), provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." As here, we had to decide who had the burden of proving the facts underlying this medical use provision and what that burden was. Also as in this case, "the trial court instructed that defendant bore the burden of proof as to the facts underlying this defense, and that he was required to prove those facts by a preponderance of the evidence." (*Mower, supra,* at p. 476.)

We began by explaining that two related but distinct issues are involved. The first issue is which party, the prosecution or the defendant, bears the burden of proof regarding the facts underlying the defense. The second issue is exactly what that burden is. (*Mower, supra,* 28 Cal.4th at p. 476.) As to the first issue, we placed the burden on the defendant. Our reasoning applies equally to this case. We relied primarily on the "so-called rule of convenience and necessity," which "declares that, unless it is 'unduly harsh or unfair,' the 'burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient.' " (*Mower, supra,* 28 Cal.4th at p. 477.) This rule supports placing the burden on defendant in this case, just as it did in *Mower.* The facts underlying section 278.7(a)'s belief requirement are peculiarly within defendant's personal knowledge, and it would be relatively difficult or inconvenient for the prosecution to prove their nonexistence. It would not be unduly harsh or unfair to place the burden of proving those facts on defendant.

Additionally, we explained that the medical marijuana statute, Health and Safety Code section 11362.5, subdivision (d), "constitutes an exception" to the criminal statutes because it provides that the criminal statutes " 'shall not apply' " when the medical requirements are met. (*Mower, supra,* 28 Cal.4th at p. 477.) The same is true here. Section 278.7(a) uses the phrase "does not apply" rather than "shall not apply," but we see no difference in meaning. " 'It is well established that where a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant.' " (*People v. George* (1994) 30 Cal.App.4th 262, 275 [35 Cal.Rptr.2d 750], quoting *In re Andre R.* (1984) 158 Cal.App.3d 336, 341 [204 Cal.Rptr. 723].) Here, section 278.7(a) is an exception to section 278.5, which supports the conclusion it is an affirmative defense that the defendant must raise.

Both of the reasons we cited in *Mower, supra,* 28 Cal.4th at page 477, for placing on the defendant the initial burden regarding the medical marijuana defense apply equally here. Accordingly, we conclude that defendant has the initial burden regarding the facts underlying section 278.7(a).

Our conclusion that defendant bears this burden raises the second question, which is how heavy that burden is. Here we come to the main contested issue. The Attorney General argues that defendant must prove the facts underlying section 278.7(a) by a preponderance of the evidence. Defendant argues he need only raise a reasonable doubt regarding these facts.

We noted in *Mower, supra,* 28 Cal.4th at page 478, that the rule of convenience and necessity is equally consistent with requiring the defendant merely to raise a reasonable doubt as it is with requiring the defendant to prove the defense by a preponderance of the evidence. Moreover, the fact that section 278.7(a) states an affirmative defense does not decide this question. For example, over a century ago, in a murder case, we considered a statute that "casts upon the defendant the burden of proving circumstances of mitigation, or that justify or excuse the commission of the homicide." (*People v. Bushton* (1889) 80 Cal. 160, 164 [22 P. 127, 22 P. 549].) We held that this statute only required the defendant "to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged." (*Ibid.*) Accordingly, to resolve the second question, we "must look elsewhere." (*Mower, supra,* at p. 478.)

In *Mower,* we began with Evidence Code section 501 which, we explained, "provides that, when a statute allocates the burden of proof to a defendant on any fact *relating to his or her guilt,* the defendant is required merely to raise a reasonable doubt as to that fact." (*Mower, supra,* 28 Cal.4th at p. 479,

italics added.) We noted that with respect to many defenses, the defendant need only raise a reasonable doubt. (*Ibid.*; see also *id.*, at p. 479, fn. 7 [giving several examples].) These defenses, we explained, "relate to the defendant's guilt or innocence *because they relate to an element of the crime in question.*" (*Id.* at p. 480.) We also noted that "[w]hen a statute allocates the burden of proof to a defendant as to a fact collateral to his or her guilt, however, the defendant may be required to prove that fact by a preponderance of the evidence." (*Ibid.*) We said that "[s]uch defenses are collateral to the defendant's guilt or innocence *because they are collateral to any element of the crime in question.*" (*Ibid.*)

Applying this test, we concluded that the defendant need only raise a reasonable doubt as to the facts underlying the medical marijuana defense. "This defense plainly relates to the defendant's guilt or innocence." (*Mower, supra,* 28 Cal.4th at pp. 481–482.) "As a result of the enactment of [Health and Safety Code] section 11362.5[, subdivision] (d), the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription." (*Id.* at p. 482.) "In sum, the defense provided by [Health and Safety Code] section 11362.5[, subdivision] (d) relates to the defendant's guilt or innocence, *because it relates to an element of the crime of possession or cultivation of marijuana.* Thus, this defense negates the element of the *possession* or *cultivation* of marijuana *to the extent that the element requires that such possession or cultivation be unlawful.*" (*Ibid.*)

As we explain, we reach the same conclusion in this case that we did in *Mower*—defendant need only raise a reasonable doubt regarding the facts underlying the section 278.7(a) defense. Two Courts of Appeal interpreting two predecessor versions of crimes similar to, but in some ways different than, the crime involved here reached differing results.

In *People v. Beach* (1987) 194 Cal.App.3d 955 [240 Cal.Rptr. 50], the court construed former section 278.5, subdivision (a), which provided in pertinent part: "Every person who in violation of a custody decree takes, retains after the expiration of a visitation period, or conceals the child from his legal custodian" is guilty of a crime. (Former § 278.5, as added by Stats. 1976, ch. 1399, § 11, pp. 6315–6316; see *People v. Beach, supra,* at p. 962.) At that time section 278.7(a) did not exist. The trial court had instructed the jury on the general, nonstatutory defense of necessity. The Court of Appeal rejected the contention that the court should have instructed the jury that the defendant need only raise a reasonable doubt regarding this defense. It concluded, "The necessity defense does not negate any element of the crime but represents a public policy decision not to punish such an individual

despite the proof of all the elements of the crime." (*People v. Beach, supra,* at p. 973.) Accordingly, the Court of Appeal held, "The trial court properly refused to instruct the jury [the defendants] had to raise only a reasonable doubt as to the necessity justifying the commission of their crimes." (*Ibid.*)

In *People v. Dewberry* (1992) 8 Cal.App.4th 1017 [10 Cal.Rptr.2d 800], the court construed former section 277, which provided in pertinent part: "In the absence of a court order determining rights of custody or visitation to a minor child, every person having a right of custody of the child who maliciously takes, detains, conceals, or entices away that child within or without the state, *without good cause,* and with the intent to deprive the custody right of another person or a public agency also having a custody right to that child," is guilty of a crime. (Former § 277, as amended by Stats. 1991, ch. 400, § 1, p. 2127, italics added.) As relevant, the statute defined "good cause," as "a good faith and reasonable belief that the taking, detaining, concealing, or enticing away of the child is necessary to protect the child from immediate bodily injury or emotional harm." (*Ibid.*; see *People v. Dewberry, supra,* at p. 1020.) This definition of "good cause" is similar to the current section 278.7(a) defense. The *Dewberry* court focused on the italicized words in former section 277, "without good cause," and concluded that the absence of good cause was an element of the offense. Accordingly, it held that the defendant need only raise a reasonable doubt regarding this element. (*People v. Dewberry, supra,* at pp. 1020–1021.)

The Legislature has amended the relevant statutes since the decisions in *People v. Beach, supra,* 194 Cal.App.3d 955, and *People v. Dewberry, supra,* 8 Cal.App.4th 1017. In 1989, after *Beach* and before *Dewberry,* the Legislature amended section 278.5 to provide: "Every person who has a right to physical custody of or visitation with a child pursuant to an order, judgment, or decree of any court which grants another person, guardian, or public agency right to physical custody of or visitation with that child, and who within or without the state detains, conceals, takes, or entices away that child with the intent to deprive the other person of that right to custody or visitation" is guilty of a crime. (Stats. 1989, ch. 1428, § 4, p. 6320.) Thus, this version of section 278.5 added an intent requirement not present in the statute interpreted in *Beach.*

The Court of Appeal opinion in this case summarized the relevant changes after the *Dewberry* decision. "After *Dewberry,* the Legislature revised the provisions regarding child abduction. Prior to the amendment, former section 277 governed child abduction by a person with a right to custody but without a court order, while former section 278.5 governed child abduction by a person having a right to custody pursuant to court order. (Stats. 1992, ch. 163,

§ 106, p. 784 [former § 277]; Stats. 1989, ch. 1428, § 4, p. 6320 [former § 278.5].) The amendment combined these two provisions into one, while making changes to the elements required to establish a violation. [Fn. omitted.] (Stats. 1996, ch. 988, §§ 8–9.) Prior to the amendment of former section 278.5, the People were only required to prove that the person with a right to custody pursuant to a court order acted 'with the intent to deprive the other person of that right to custody . . . .' [Citation.] The statute did not include a malice element, nor did it require the People to prove that the defendant acted without good cause. (Former § 278.5; Stats. 1989, ch. 1428, § 4, p. 6320.)

"After the amendment, though, the People were required to prove that a defendant with a right to custody (whether by court order or operation of law) 'maliciously deprive[d]' a lawful custodian of the right to custody or visitation. (§ 278.5(a), as amended by Stats. 1996, ch. 988, § 9.) In other words, during the consolidation of former sections 277 and 278.5, the malice element of former section 277 was (1) *retained* in the case of child abduction by a person having a right to custody but without a court order, and (2) *added* in the case of a person having a right to custody pursuant to a court order. The absence of the good cause element was *deleted* with respect to a person with a right to custody without a court order. With respect to a person having a right to custody pursuant to court order, the deletion of the absence of good cause element of former section 277 made no change in the law. (Stats. 1996, ch. 988, § 9.) As part of the statutory revision, the good faith defense in section 278.7 was added. (*Ibid.*)"

In sum, the key differences between the statutes at issue here and the one in *People v. Beach, supra,* 194 Cal.App.3d 955, are that in *Beach* the statute had no malice requirement and the section 278.7(a) defense did not exist. The key differences between the statutes here and the one in *People v. Dewberry, supra,* 8 Cal.App.4th 1017, is that in *Dewberry,* but not here, the absence of good cause was an element of the crime, the statute here requires malice, and the separate section 278.7(a) defense did not exist in *Dewberry.* We must now apply the analysis of *Mower, supra,* 28 Cal.4th 457, to decide which rule prevails after these changes.

We think that, for these purposes, the current statutory scheme is closer to that of *People v. Dewberry, supra,* 8 Cal.App.4th 1017, than that of *People v. Beach, supra,* 194 Cal.App.3d 955. The *Beach* statute had neither a malice requirement nor a separate defense like that of section 278.7(a). Instead, the trial court instructed the jury on the judicially created necessity defense. This defense was created in other contexts, primarily to provide a defense against a charge of escape from lawful custody. (See, e.g., *People v. Lovercamp* (1974) 43 Cal.App.3d 823 [118 Cal.Rptr. 110].) This defense is similar in some

respects to the section 278.7(a) defense, and courts have, indeed, held that a defendant must prove the facts underlying this necessity defense by a preponderance of the evidence. (See *Mower*, *supra*, 28 Cal.4th at p. 480, fn. 8.) But the statute here is quite different from the escape statutes or the one in *Beach*. The current section 278.5 requires that the person act "maliciously." Section 7, subdivision 4, states that this word "import[s] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act . . . ." The parties debate at length exactly how this definition fits in with section 278.7(a)'s belief requirement. The two concepts are not identical. But, in effect, the section 278.7(a) defense provides a specific example of when the person does not act maliciously.

■ Although the Legislature replaced the absence-of-good-cause element of the *Dewberry* statute with a malice element and the separate section 278.7(a) defense, we see no indication it intended to place a greater burden on the defendant to establish good cause than had existed before the statutory change. We think the *Dewberry* rule should still apply. The malice requirement and the section 278.7(a) defense are intertwined, not entirely separate. Section 278.7(a) is not entirely collateral to the elements of the offense but relates to the element of malice and thus to the person's guilt. (Cf. *Mower*, *supra*, 28 Cal.4th at pp. 479–480.)

■ We conclude that a defendant need only raise a reasonable doubt whether the facts underlying the section 278.7(a) defense exist. Thus, the trial court erred in requiring defendant to prove those facts by a preponderance of the evidence. The Court of Appeal had found the preponderance-of-the-evidence instruction correct but found error in not clarifying the relationship between section 278.7(a)'s belief defense and the element of malice. It found that error prejudicial. We conclude that the more serious error that we have found—placing an erroneously high burden on defendant to prove the section 278.7(a) defense—was prejudicial. The Attorney General does not argue that any error was harmless. In *Mower*, *supra*, 28 Cal.4th at pages 484–485, we did not decide which standard of prejudice applies to this kind of error because we found the error prejudicial even under the more lenient test for state law error. (See *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].) We reach the same conclusion here. The jury obviously did not believe defendant had proven by a preponderance of the evidence that he had met the requirements of the section 278.7(a) defense. But, as the Court of Appeal found, the evidence in this regard was reasonably close. Moreover, as in *Mower*, the error "went to the heart of the case against defendant." (*Mower*, *supra*, at p. 464.) Accordingly, we find a reasonable probability the result would have been more favorable to defendant in the absence of the error. (*Id.* at p. 484; *People v. Watson*, *supra*, at p. 836.)

### III.   CONCLUSION

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.