Filed 12/14/21  In re K.C. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN MATEO COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.C.,<br><br>        Defendant and Appellant. | A162413<br><br>(San Mateo County<br>Super. Ct. No. 19JD0918) |

D.C. (mother) appeals from juvenile court orders (1) finding that the San Mateo Human Services Agency (Agency) provided her reasonable family reunification services and (2) declining to extend her services for an additional six months.  We affirm.

**BACKGROUND**

On November 6, 2019, based on a request by the San Mateo County Human Services Agency (agency), the juvenile court issued a protective custody warrant because mother was unable to provide shelter for her two children, then ages five and six (collectively, the minors), and had been unwilling to engage in services.  According to the agency's request for a warrant, mother

1

had been "exited" from the shelter where she had been living with the children on October 31, 2019 due to her failure to send the children to school, and she admitted to walking the streets with the children that night because she had no plan for shelter.[1] On November 1, 2019, the agency provided mother with a voucher for 5 days in a motel, as mother had already used her shelter voucher for the year. The agency requested a protective custody warrant because mother did not have a plan to provide shelter for the minors after her motel voucher ran out. As a result of the issuance of the protective custody warrant, the children were detained in a county foster home.

On November 8, 2019, the agency filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b)(1)[2], alleging mother's failure or inability to protect the minors and her inability to provide regular care for the minors due to mental illness. The juvenile court ordered the children detained on November 12, 2019 and scheduled a jurisdictional hearing.[3]

At the jurisdictional and dispositional hearing in February 2020, the court sustained the petition and declared the minors to be dependents of the court. Notably, mother had been hospitalized due to mental health issues in late 2019 and the original January 2020 hearing date had to be continued because

---

[1] The children had attended school only five days between July 29, 2019 and October 31, 2019.

[2] All undesignated statutory references are to the Welfare and Institutions Code.

[3] The minors' presumed father was also involved in the dependency proceedings, but he is not a party to this appeal.

mother was in a mental health treatment facility and unable to attend. Mother informed the social worker that she had been diagnosed with schizophrenia and obsessive compulsive disorder (OCD), and she was living at Redwood House, a residential treatment facility, and engaging in therapy through the facility and through Felton Group. The court granted reunification services and ordered mother to engage in mental health services, medication management (including taking prescribed medication), parent education, and visitation.

At the six-month review hearing in August 2020, the agency reported that mother had left Redwood House and then briefly lived with the minors' maternal grandmother before being accepted into the Spring Street Shelter, where she continued to engage in mental health treatment with a psychiatrist and therapist from Felton Group (Felton). The agency noted that mother was not engaging in parenting classes due to a need to focus on her mental health, admitted that she was not ready to reunify with her children, had declined to engage in visitation with her children between November 2019 and late March 2020, and had repeatedly been non-responsive to the agency's efforts to contact her. The director of Spring Street Shelter stated that mother was on the verge of being discharged due to not following program rules and not working toward her goals. After the onset of the pandemic, mother engaged in twice-weekly video visits with her children, missing only three visits between March 28, 2020 and August 2020. The agency recommended that the children remain dependents of the court, and that the court order

continued reunification services and a 12-month hearing. The court adopted the recommendations, found that the agency had provided reasonable services, ordered additional reunification services and supervised visitation (including via virtual visits while sheltering in place.) The court set a 12-month review hearing for January 2021.

In late December 2020, the agency submitted its report in advance of the 12-month review hearing. Since the six-month review, mother had been discharged from Spring Street Shelter due to program non-compliance and admitted to a psychiatric hospital due to hallucinations. Mother then went to Redwood House, a crisis residential program, and from there to Caminar's Eucalyptus House, a six-month residential program that provides supportive independent living. Mother continued to receive therapy and medication through Felton. Mother's therapist and psychiatrist from Felton reported that mother was suffering from debilitating OCD and psychosis, sometimes refused to take her medication, and was unable to live independently. The report further noted that mother had been amenable to virtual visits with the minors (although she had failed to attend one scheduled video visit), and that mother had canceled two in-person visits with the minors. Mother had also failed to respond to calls from her social worker and her provider of parenting services. Mother agreed she was not ready to reunify with her children.

In the first addendum report submitted prior to the continued 12-month review, the agency reported that mother had missed in-person and video visits with the minors. The Director

of Eucalyptus House reported that mother was frequently unable to get out of bed before noon and was therefore not participating in morning programming at Eucalyptus House; the Director further noted that mother seemed "overwhelmed." Likewise, the Assistant Director reported that mother frequently yelled from her bedroom to Eucalyptus House staff to ask for things like toilet paper, rather than following program rules that required her to go to the front desk. The Assistant Director opined that mother's failure to follow program rules was "concerning" if her goal was to live independently, and that mother's progress had been "slow."

Subsequent addendum reports similarly stated that mother continued to "sleep[] a lot," with the result that she missed medication and had limited engagement in programming. Mother remained unable to live independently, and the Eucalyptus House Director recommended a residential facility with a higher level of mental health services. While at Eucalyptus House, mother continued to engage in in-person therapy with her psychologist from Felton. Mother missed and declined in-person and video visits with her children in February and March 2021.

After a contested hearing, the juvenile court ultimately found clear and convincing evidence that mother had failed to participate regularly and make substantive progress in her court-ordered treatment plan, as she had made only minimal progress toward alleviating the concerns that had led to the placement. It further found by a preponderance of the evidence that returning

5

the children to mother's care would create a substantial risk of detriment to the children. It therefore terminated reunification services as to mother.[4]

## DISCUSSION

### I. Reasonable Services

Mother first argues the juvenile court erred by finding the Agency provided reasonable services, contending that the Agency took inadequate measures to assist her with her case plan and that her services were substantially impacted by the pandemic. We disagree.

" '[W]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard.*' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239–1240.) As mother notes, the burden is on the appellant to show that the evidence is insufficient to support the juvenile court's findings. (*In re L.Y.L.* (2002) 101 Cal.App.4th 962, 971.) " 'The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case.' " (*In re K.C.* (2012) 212 Cal.App.4th 323, 329.) "To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss

---

[4] The court also continued reunification services for the presumed father and permitted further supervised visitation between mother and the minors.

6

of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' " (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426, italics omitted.)

In the present case, the minors were removed from mother due to mother's serious mental health issues that led to her inability to care for herself and her children. Mother admits that the agency provided her "significant services," but she nonetheless contends that the agency failed to "assure [she] was receiving the best available services within her residential programs." Mother misapprehends the relevant standard. The question is not whether the agency provided the best possible services, but whether the services were reasonable under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 541.)

The record contains substantial evidence that the agency provided mother with reasonable services designed to address her identified mental health and parenting concerns. Mother was in a variety of residential treatment programs and received therapy through both these programs and through Felton throughout her various placements, but she remained incapable of even self-care during the reunification period. The agency remained in appropriate contact with her treating psychiatrist and psychologist from Felton and her case managers at the various residential facilities. Mother faults the agency for not providing a physical copy of the case plan to staff at her residential

7

programs, but she does not explain how this failing caused any prejudice.  Moreover, she admits that the supervising social worker discussed her case with the residential programs' managers, and the record is clear that mother's treatment professionals from Felton were aware of her case needs and that mother's residential program managers and social worker were in contact with her Felton treatment team.

We also reject mother's contention that the services were not reasonable because they were partially virtual due to the pandemic.  Mother asserts that she "could not be expected to demonstrate substantial progress on her serious mental health issues with only telephonic therapy."  This argument ignores that reunification services need only be reasonable under the circumstances (*In re Misako R., supra,* 2 Cal.App.4th at p. 547), and it was certainly reasonable for some of mother's therapy to be provided remotely during a worldwide pandemic.  Mother's argument also ignores that in-person programming and therapy were provided at her residential treatment facilities, but she was frequently unable to get out of bed to participate in such activities.

Mother's contention that the lack of in-person visitation impacted her ability to "demonstrate her parenting skills" fares no better.  Not only did the trial court find that her parenting skills were not the real concern in the case because she was able to complete the parenting education, mother ignores that she stated she was amenable to remote visits and repeatedly declined in-person visits when given that option.

Accordingly, we are unpersuaded by mother's contention that the agency failed to provide reasonable reunification services.

## II.  Extension of Services

Mother also asserts that the juvenile court abused its discretion in declining to extend her reunification services for an additional six months.  Again, we disagree.

Citing *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1016, mother argues that a court has discretion to continue an 18-month hearing and extend reunification services upon a showing of good cause.  But *Mark N.* stated that "[a] juvenile court has discretion to continue an 18-month hearing pursuant to section 352 when, as here, no reasonable reunification services have ever been offered or provided to a parent." (*Mark N., supra*, 60 Cal.App.4th at p. 1017.)  That is not the case here.  Even if we were to look at the other factors *Mark N.* said a court should consider—such as the likelihood of success of further reunification services and whether the minors' need for a prompt resolution of their dependency status outweighs any benefit from further reunification services (*ibid.*)—we have little trouble concluding that the juvenile court did not abuse its discretion in declining to extend mother's reunification services.  Given mother's failure to make more than minimal progress in addressing her serious mental health issues over the course of the dependency, despite significant and intensive treatment throughout, there was no good cause to extend mother's reunification services.

**DISPOSITION**

The juvenile court's orders are affirmed.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
ROSS, J.[*]

*In re K.C. et al.* (A162413)

---

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.