Filed 4/9/20; Certified for Publication 4/23/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REMONDO BELL,<br><br>    Defendant and Appellant. | B288528<br><br>(Los Angeles County<br>Super. Ct. No. NA101672) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Affirmed in part and remanded with direction.

Janet Gusdorff, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————

Remondo Bell was convicted of one count of attempted robbery (Pen. Code, §§ 211, 664)[1]; one count of second degree murder (§ 187, subd. (a)); and one count of hit and run driving (Veh. Code, § 20001, subds. (a), (b)(1)). The jury found not true the allegation that a principal was armed in the commission of the attempted robbery. The trial court found true the allegations that appellant had served four prior prison terms within the meaning of section 667.5, subdivision (b). The trial court sentenced appellant to a total term of 21 years to life in prison, consisting of 15 years to life for the murder conviction, plus the high term of three years for the attempted robbery conviction, plus three 1-year terms for the section 667.5 enhancements.[2]

Appellant appeals from the judgment of conviction, raising 13 claims of error: 1) he was convicted on legal theories subsequently invalidated by Senate Bill No. 1437; 2) there is insufficient evidence to support his conviction for the murder of his accomplice Ernest Young under the provocative acts doctrine; 3) the trial court gave an erroneous instruction on the provocative acts doctrine; 4) because Young was already dead, insufficient evidence supports the murder conviction on the theory that he killed Young by driving over him with a van; 5) the trial court gave an erroneous instruction on felony murder; 6) the trial court erred in failing to instruct the jury on causation; 7) the trial court gave an incorrect and incomplete instruction on the defense of unconsciousness; 8) the trial court erred in instructing the jury on flight; 9) the trial court erred in instructing the jury on the

_____

[1] Further undesignated statutory references are to the Penal Code.

[2] The court chose to impose only three of the four terms.

2

defense of necessity; 10) the trial court erred in failing to instruct the jury on the defense of duress; 11) defense counsel's failure to object to portions of the testimony of the robbery victim, Erik Sliskovich, constituted ineffective assistance of counsel; 12) cumulative error requires reversal; and 13) the section 667.5 enhancement terms must be stricken. The People contend the abstract of judgment must be corrected to remove erroneous presentence conduct credit.

We agree the section 667.5, subdivision (b) enhancement terms must be stricken and the matter remanded to the trial court for resentencing. At that time, the abstract of judgment should be corrected. As we explain in more detail below, appellant has forfeited some of his substantive claims and others lack merit. If there is instructional error, the errors are harmless under any standard of review. We affirm the judgment of conviction.

## BACKGROUND

In 2007 or 2008, Erik Sliskovich met appellant at a cigar shop in Long Beach. Sliskovich, a cigar collector, knew appellant as Mark. In 2011 or 2012 Sliskovich opened a cigar bar with some partners. Sliskovich purchased high-end cigars from appellant and always paid in cash. The payments ranged from a few hundred to several thousand dollars.

On March 26, 2015, appellant texted Sliskovich and asked if he wanted to purchase Opus cigars. Initially, Sliskovich did not respond. Eventually, they arranged to meet at Sliskovich's property on the morning of March 28, 2015. Sliskovich lived in Wilmington and ran a car restoration business from his residence. He had numerous surveillance cameras on the property.

3

On March 28, 2015, Sliskovich opened the gate to the parking area of his property and parked his truck across the street. A U-Haul van drove into the parking lot and appellant got out of the van. Sliskovich drove his own truck back into the lot, parked, and got out. The two men exchanged greetings.

Many of the subsequent events were recorded by the surveillance cameras in the parking area of Sliskovich's business. Sliskovich himself had only fragmented memories of the events. The videos were played for the jury at trial, and several witnesses were asked questions based on events shown in the videos.

The videos show that after exchanging greetings, appellant and Sliskovich began walking toward the van. Appellant fell behind. He waved at the van three times and three masked men got out. One of the men was accomplice Ernest Young. Appellant and the masked men moved toward Sliskovich, who backed up until he reached the rear of a pick-up truck. The three men surrounded and were very close to Sliskovich. A reasonable viewer could describe their posture as threatening. The video shows one of the masked men reaching out toward Sliskovich's torso. A video shot from a different angle shows appellant reaching out toward Sliskovich's back.

Sliskovich recalled the three masked men getting out of the van; he believed Young had a gun. Sliskovich was aware appellant was behind him, but he began backing up. Sliskovich also recalled that one or more of the men said, "Give me the money, give it up." Sliskovich believed that Young lifted his gun in his direction. Surveillance video shows an object that resembles a gun in Young's hand, but the jury found not true the allegation that a principal was armed with a firearm in the commission of the attempted robbery.

4

Sliskovich explained: "I wouldn't say [Young's] gun provoked me to start shooting. I would say the confluence of circumstances of guys with masks, [appellant] behind me . . . it's not just that one thing." When appellant grabbed Sliskovich, Sliskovich believed appellant was "one of the guys that was going to kill me." He explained, "I know [appellant] well enough, I can identify him. The other guys were wearing masks. So the way the situation is going down, there is no way I am going to survive this at all."

Surveillance video shows Sliskovich shot Young in the left hip as the group was at the rear of the pickup. Appellant was reaching his arm toward Sliskovich's back as the shot was fired; appellant then grabbed or attempted to grab Sliskovich from behind. Sliskovich fired at the two other masked men as they backed away. He then turned toward and struggled with appellant, shooting him multiple times. Appellant fell to the ground and Sliskovich fired at one of the masked men, then at Young. A bullet hit Young in the torso and he fell.

According to Sliskovich, everything went gray and became a blur for him. He recalled muzzle flashes and a struggle. He recalled going inside his place, coming back outside, observing that the van was leaving, looking at his hand and noticing his own gun had the slide locked back, indicating it was out of ammunition. He had been carrying the gun in his waistband. He went back inside, got another gun, and returned outside to make sure nobody was coming back.

Young lay on the ground a couple of feet behind the van. The masked man who had been driving the U-Haul leaned over Young and appeared to retrieve something from the ground resembling a handgun. He then ran out of the lot and down the

street.  The other masked man also ran down the street.
Appellant managed to get into the driver's seat of the van.  He
backed up the van, in the process running over Young's head and
torso.  He then drove forward, running over Young a second time.
Young's body was caught underneath the rear of the van.
Appellant drove the van for 2.5 miles, dragging Young's body
along the way.

Sliskovich called 911, his attorney, and a friend who was a
police detective.

Police stopped the van, which displayed no license plate.
That morning the van had been reported stolen.  There were no
cigars inside.  Appellant exited the van and collapsed.  He was
taken to a nearby hospital.  He sustained three gunshot wounds
to his torso and needed multiple surgeries over the next five days.

Deputy Medical Examiner Ogbonna Chinwah autopsied
Young.  He determined the cause of death was a combination of
multiple gunshot wounds and blunt force trauma.  The gunshot
wound to Young's back, which passed through his aorta, was
fatal.  The blunt force trauma to Young's head and neck was also
fatal.

At trial, Dr. Chinwah viewed surveillance video of the
incident.  At 4 minutes 7 seconds on the video timestamp, he
observed Young move as he lay on the ground.  This movement is
clearly visible.  The prosecutor asked the doctor if he saw another
movement in Young's upper body at the 4 minute 31 second
mark.  The doctor replied, "Well, it appears there was a little bit
fuzzy."  We have reviewed the video, and it does appear there is
some sort of movement in Young's upper body, although it is
fuzzy as the doctor pointed out.  Dr. Chinwah testified movement

6

in the body is "indicative of life." He agreed if a person is moving, "[t]he person is not quite dead yet."

Appellant offered expert testimony by Dr. Frank Sheridan, a forensic pathologist and former chief medical officer of the San Bernardino County Coroner's Office. Dr. Sheridan testified the gunshot injury to the aorta was the sole cause of death and Young was already dead when the van ran over him. In Dr. Sheridan's opinion, as soon as the aorta was pierced, Young's circulation stopped and he was dead. He characterized the movements on the video as "death throws" or spasms, which he described as involuntary muscle twitching and nerve discharge "as the person is dying." Dr. Sheridan added there is a term in pathology called "agonal" and "it means dying. In the process of dying."

## DISCUSSION

The prosecutor sought to hold appellant liable for Young's death under two alternate theories which hinged on when Young actually died. The first theory required a finding that Young was still alive after being shot and appellant caused or contributed to Young's death by running over him. Three factual scenarios fit this theory: (1) appellant ran over Young with the van while the robbery was ongoing (first degree felony murder); (2) appellant ran over Young with awareness of the danger to human life and in conscious disregard thereof after the robbery was over (second degree murder); (3) appellant ran over Young after the robbery was over, failing to stop, but fault was not an issue (hit and run causing death).

The second theory required a finding that Young was killed by Sliskovich and died before appellant ran over him. Under this theory, appellant committed a provocative act during the robbery,

7

provoking Sliskovich to respond by shooting and killing Young. Such a murder should have been first degree murder, because the underlying crime was robbery.

The jury found appellant guilty of attempted robbery, murder in the second degree, and simple hit and run. The jury found appellant not guilty of hit and run causing death. Both appellant and respondent believe murder in the second degree has to be based on appellant running over a still-living Young after the robbery was complete. They correctly reason such a verdict would be inconsistent with the not guilty finding on the hit and run causing death.

Both parties contend, and we agree, it is not possible to determine which theory the jury relied on to convict appellant of second degree murder.[3] Inconsistent verdicts are allowed to stand if they are otherwise supported by substantial evidence. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*People v. Lewis* (2001) 25 Cal.4th 610, 656.) Appellant acknowledges as much, but contends the inconsistency can impact an analysis of possible prejudice from trial court errors.

We do not agree. The inconsistency does not hamper our analysis on appeal. As set forth in more detail below, we find sufficient evidence to support both theories of murder. We do not

[3] We note that if the verdicts are based on compromise, mistake, or leniency, the jury might have relied on the provocative act doctrine, but also agreed it was second degree murder for one of those reasons. The last sentence of the provocative acts instruction gratuitously told the jury: "Murder which is not of the first degree in murder of the second degree."

8

need to rely on a particular theory of murder to assess appellant's other claims of prejudice.

## I. *Appellant Must Follow The Procedures In Section 1170.95 To Raise His Claim The Prosecutor Relied On Legal Theories Now Invalidated By Senate Bill No. 1437.*

Appellant contends two of the prosecution's legal theories have been rendered legally incorrect by the passage of Senate Bill No. 1437 during the pendency of this appeal. Appellant contends because it cannot be determined on which theory the jury relied, reversal is required. Senate Bill No. 1437 amended section 189 to require proof that appellant was the actual killer, aided and abetted the murder with the specific intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).) Section 188 was amended to provide: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also added section 1170.95 to the Penal Code, which sets out a procedure by which a defendant currently serving a sentence for murder based on the felony murder rule or the natural and probable consequences doctrine may petition for relief in the trial court. Appellant acknowledges that our colleagues in Division 5 of this District have concluded that a defendant whose case was pending when Senate Bill No. 1437 became law must use the mechanism of section 1170.95 to obtain relief. (*People v. Martinez* (2019) 31 Cal.App.5th 719.)

9

Appellant urges us not to follow *Martinez*. We agree with the reasoning of *Martinez* and decline appellant's invitation to reject the reasoning of that case and permit him to seek relief in this appeal. The legal theories argued by the People were valid when argued and when appellant was convicted. Appellant's arguments must be addressed in the first instance to the trial court. In this regard, we also decline appellant's invitation to stay the appeal until he has filed a petition to obtain relief under section1170.95. We find no good cause for such a stay.

II. ***The Surveillance Video Provides Sufficient Evidence To Support A Conviction Under The Provocative Acts Doctrine.***

Appellant contends the jury might have convicted him of second degree murder under the provocative acts doctrine, but there is insufficient evidence to support such a conviction. He claims that "other than Mr. Young's alleged pointing a gun to induce [the victim] to surrender cash, there was no evidence of any life-threatening acts." Appellant contends Young's act was necessary for the robbery and so does not qualify as a provocative act. He contends the other circumstances – three men wearing masks, joining a fourth unmasked man, surrounding the victim and demanding money from him – did not present a high probability that the victim would pull a gun and shoot at the robbers. Appellant further contends a conviction based on insufficient evidence would violate his Fifth Amendment right to due process and his Sixth Amendment right a jury trial. We are not persuaded.

A. *Relevant Law*

Under the provocative act doctrine, the perpetrator of a crime may be held liable for the killing of an accomplice by the

10

victim of the crime or a third party.  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655.)  "A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response."  (*Id*. at p. 655.)  An accomplice may be held liable for the provocative act of a surviving accomplice, but is not liable where " "the deceased provocateur accomplice is the sole cause of his [own] death.' "  (*People v. Hunter* (2017) 15 Cal.App.5th 163, 171.)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]  In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]  'This standard applies whether direct or circumstantial evidence is involved.' [Citation.]"  (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

> B.     *Substantial Evidence Supports Appellant's*
> *Conviction.*

The jury found not true the allegation that a principal was armed in the commission of the robbery.  Thus, there is no reasonable possibility that the jury relied on Young pointing a gun as the provocative act.

11

Surveillance video does show an object in Young's hand, which resembles a gun, and it is visible as soon as he exits the van. As the People pointed out in closing argument, Sliskovich did not fire at the sight of the object, which he believed was a gun. Even when the masked men advanced toward Sliskovich, Sliskovich simply backed up. It was only when Sliskovich could no longer back up, the men had moved in very close to him, and appellant and at least one other robber reached out toward him that Sliskovich reacted. A jury could find that this crowding and grabbing conduct was not necessary to the commission of the robbery and instead suggested that Sliskovich was going to be physically harmed. A jury could further find the natural consequences of such threatening behavior were dangerous to human life and appellant and the other robber acted in conscious disregard of that danger.

Appellant contends the men's behavior did not suggest that Sliskovich would be killed even if he cooperated in the robbery. Not so. Appellant elected not to conceal his identity, and this decision, coupled with the men's behavior, could and did reasonably suggest to Sliskovich (and any reasonable person in his place) that appellant would not let him survive the robbery.

Appellant also contends there was not a high probability that Sliskovich would be carrying a concealed handgun during the robbery. First, there is no requirement that a victim be armed with a firearm. Appellant chose to attack the victim at his place of residence/business. On hand at the location were many objects likely to be used in the victim's business and residence, like kitchen knives and tools, which also could have been used to inflict fatal injuries. Second, appellant's conduct was threatening and highly likely to provoke a defensive response. That

Sliskovich happened to have a gun on him and used it to defend himself instead of, say, his fists, does not temper the provocative nature of appellant's conduct. Third, appellant knew Sliskovich's business was cash-based. It is highly probable the proprietor of a cash-based business would arm himself during a cash transaction, where, as here, Sliskovich was by himself when he met up with appellant.

Further, once Sliskovich shot Young the first time, which put appellant on notice that Sliskovich was armed, appellant nevertheless grabbed Sliskovich and struggled with him for control of the gun. This was clearly unnecessary to the robbery and the natural consequences were dangerous to human life. A jury could reasonably find appellant acted with conscious disregard of human life. It was only after Sliskovich prevailed in this struggle with appellant that he fired the fatal shot at the fleeing Young.

"If we determine that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation], as is the due process clause of article I, section 15, of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690 (*Osband*).) We have so determined, and appellant's constitutional claims fail.

### III. *The Provocative Act Instruction Correctly States The Law.*

Appellant contends CALJIC 8.12, which instructed the jury on the provocative act doctrine, was defective in three ways: 1) it did not tell the jury that appellant could not be found guilty if the only provocative act was committed by Young; 2) it improperly permitted the jury to find that appellant's mere participation in

13

the attempted robbery was a provocative act; and 3) it omitted the foreseeability element.  We do not agree.

The instruction states the killing must occur "in response to an intentional provocative act by a perpetrator of the crime other than the deceased perpetrator" and the People must prove "defendant also committed an intentional provocative act."  Thus, the instruction directly told the jury it could not convict appellant if the only provocative act was committed by Young, the decedent.

The instruction also told the jury "the provocative act must be an act beyond that necessary simply to commit the crime."  Thus, the instruction did not permit the jury to convict appellant solely on the basis of his participation in the robbery.  Appellant contends this sentence is inadequate because the underlying crime was "armed robbery" but the crime listed in the instruction was merely "attempted robbery."  Appellant claims the jury might have concluded the provocative act could be Young's use of a weapon.  The instruction required a provocative act by appellant and there was no suggestion that he was armed.  Further, the jury found not true the allegation that a principal in the robbery was armed.[4]  Assuming for the sake of argument the instruction should have listed the crimes as robbery with a firearm, any error is harmless under any standard of review.

Finally, appellant contends that because the instruction used only the term "natural" and not "natural and probable" the

---

[4]  There is no such offense as "armed robbery."  The offense of robbery requires only an unlawful taking from the presence of another taking by fear or force.  (§ 211.)  If a robber uses a firearm, that is charged as an enhancement to the crime of robbery.

14

instruction failed to require the jury to find it was objectively foreseeable there was a high probability the act would result in someone's death. Appellant contends the instruction's use of the term "natural consequences" is not normally a problem because the instruction contemplates the court will also give CALJIC Nos. 3.40 and 3.41 on causation, and those two instructions also discuss foreseeability. Considering CALJIC No. 8.12 in isolation, we see no error in the use of the term "natural consequences."

In the classic provocative act doctrine, malice is implied from the provocative act. (*People v. Concha* (2009) 47 Cal.4th 653, 662–663 (*Concha*).) Implied malice has both objective and subjective components. The objective test requires " ' "an act, the natural consequences of which are dangerous to life." ' " (*People v. Knoller* (2007) 41 Cal.4th 139, 143.) Thus, CALJIC No. 8.12 used appropriate terminology.

Court have also used appellant's preferred formulation, stating that malice is implied from " ' "an act that involves a high degree of probability that it will result in death." ' " (*Concha*, *supra*, 47 Cal.4th at p. 663, quoting *People v. Washington* (1965) 62 Cal.2d 777 782.) If appellant preferred this alternate phrasing, he should, at a minimum, have requested the instruction be modified. He did not. The objection is waived. (*People v. Young* (2005) 34 Cal.4th 1149, 1202 (*Young*) [failure to request clarification forfeits issue on appeal].)

IV.     ***Sufficient Evidence Supports An Inference That Young Was Alive When The Van Hit Him, And So Supports The Murder Conviction.***

Appellant contends the jury might have convicted him of second degree murder on the theory that he killed Young when he drove the van over him. He contends such a conviction would

15

not be supported by substantial evidence because it was speculative whether Young was still alive at that point. He further contends that such a conviction would violate his federal constitutional rights to due process and a jury trial. We do not agree.

The coroner, Dr. Chinwah, listed two causes of death on the autopsy report: the gunshot wounds and the blunt force trauma. Each would be fatal, meaning each would cause death. When questioned about the two causes, Dr. Chinwah testified that death was caused by the "combination of multiple gunshot wounds and blunt force trauma" from the van. He could not say how long death would take from either injury.

Dr. Chinwah was shown a video of the moments before the van ran over Young. He agreed that there was movement by Young at the timestamp of 4 minutes 7 seconds. The prosecutor stopped the video at about 4 minutes 31 seconds and asked Dr. Chinwah if he saw any movement. The doctor replied, "Well, it appears there was a little bit fuzzy." We have reviewed this video and there appears to be a brief movement by Young at about the 4 minute 31 second mark. We also observed a similar brief movement a few seconds later, at about the 4 minute 33 to 34 second mark. Dr. Chinwah opined when a person is moving, he is "not quite dead yet." He testified, "People who are alive move."

Appellant's expert Dr. Sheridan offered a different opinion on the cause and timing of death. When asked about Young's movements on the ground, however, Dr. Sheridan described the movements as ones which occur "as the person is dying" or "in the process of dying." Thus, Dr. Sheridan implicitly acknowledged that Young was not yet dead when he was moving on the ground.

16

The two experts' testimony plus the video evidence is sufficient to support a finding that Young was still alive when the van ran over him. Somewhere between four and eight seconds elapsed between the last visible movement of Young's body and the van making contact with his head. A jury could reasonably decide that Young was still in the process of dying at that point, and not yet dead. The reasonableness of such a finding is underscored by the fact that only about 42 seconds elapsed in total between the gunshot wounds to the aorta and the blunt force trauma from the van.[5]

Because we have determined "that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation], as is the due process clause of article I, section 15, of the California Constitution." (*Osband, supra,* 13 Cal.4th at p. 690.)

## V. *Appellant Has Forfeited His Claim that CALJIC No. 8.10 Is Ambiguous.*

Appellant contends the trial court erred in giving CALJIC No. 8.10, which explained felony murder, because the instruction permitted the jury to find him guilty of murder as long it found Young was killed by Sliskovich during the commission of the attempted robbery, regardless of appellant's individual role. Appellant acknowledges the instruction is a correct statement of the law when a defendant causes death, but contends it does not embody the law where the shooter is a third party.

---

[5] Dr. Sheridan testified the video showed Young being shot at 3 minutes 56 seconds and run over at 4 minutes 38 seconds.

The jury was given an instruction on the law applicable when the killer is a third party. Appellant's claim in substance is that CALJIC No. 8.10 is ambiguous under the circumstances of this case. His failure to request a clarification instruction forfeits this claim. (*Young, supra*, 34 Cal.4th at pp. 1202–1203.)

Assuming for the sake of argument the claim is not forfeited, we would ask " 'whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.' " (*Young, supra*, 34 Cal.4th at p. 1202.) We consider the instructions as whole, not parts of an instruction or a single instruction. (*Ibid.*) We also consider the arguments of counsel. (*Ibid.*)

We do not find the instruction ambiguous. The instruction states "Every person who unlawfully kills a human being during the commission or attempted commission of Robbery is guilty of the crime of murder."[6] This language on its face tells the jury that the "person who unlawfully kills" is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury. In this context, appellant would be the "person who unlawfully kills" if Young was alive when appellant drove the van over him.

---

[6] CALJIC 8.10 provides in full: "Defendant is accused in Counts 3 of having committed the crime of murder, a violation of section 187 of the Penal Code. [¶] Every person who unlawfully kills a human being during the commission or attempted commission of Robbery is guilty of the crime of murder in violation of Penal Code section 187. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. The killing occurred during the commission or attempted commission of Robbery."

CALJIC No. 8.10 was immediately followed by CALJIC No. 8.12, which specifically set forth the detailed alternate requirements for finding appellant guilty of murder if Sliskovich, the victim of the robbery, killed Young. The jury was instructed to "[c]onsider the instructions as a whole and each in light of all the others." The prosecutor argued appellant would be guilty of felony murder (CALJIC No. 8.10) or second degree murder if he killed Young by running over him with the van. The prosecutor also argued the provocative act doctrine applied if the gunshot wounds from Sliskovich killed Young. Appellant suggests no reason why the jury would misunderstand the combination of instructions and argument and then convict appellant of murder simply because Sliskovich shot Young during the robbery without provocation. We find no reasonable probability or possibility the jury understood CALJIC No. 8.10 in the manner suggested by appellant. (*Young, supra*, 34 Cal.4th at p. 1202–1203.)

## VI. *The Trial Court's Failure To Instruct The Jury With CALJIC Nos. 3.40 And/Or 3.41 Was Not Prejudicial.*

The trial court expressed its intention to give CALJIC No. 3.41 on causation, but then did not do so, apparently inadvertently. The trial court did not find CALJIC No. 3.40 applicable to the facts of this case.

CALJIC No. 3.40 provides: "[To constitute the crime of [ ] there must be in addition to the (result of the crime) an unlawful [act] [or] [omission] which was a cause of that (result of the crime).] [¶] The criminal law has its own particular way of defining cause. A cause of the (result of the crime) is an [act] [or] [omission] that sets in motion a chain of events that produces as a direct, natural and probable consequence of the [act] [or]

19

[omission] the (result of the crime) and without which the (result of the crime) would not occur."

CALJIC No. 3.41 provides: "There may be more than one cause of the (result of the crime). When the conduct of two or more persons contributes concurrently as a cause of the (result of the crime), the conduct of each is a cause of the (result of the crime) if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the moment of the (result of the crime) and acted with another cause to produce the (result of the crime). [¶] [If you find that the defendant's conduct was a cause of (injury, death, etc.) to another person, then it is no defense that the conduct of some other person [, even the [injured] [deceased] person,] contributed to the (injury, death, etc.).]"

When causation is an issue, the court is required to instruct the jury on the subject. (*People v. Bernhardt* (1963) 222 Cal.App.2d 567, 591.)

Appellant contends that causation was an issue. His defense was that the blunt force trauma from the van was not the sole cause of death of Young. He contended the gunshot wound was the sole cause of death. We see no reasonable probability or possibility that appellant would have received a more favorable outcome if either or both of these instructions had been given.

Both experts testified the gunshot wounds inflicted by Sliskovich were fatal. Dr. Chinwah testified the blunt force trauma was also fatal. Defense expert Dr. Sheridan did not dispute that the blunt force trauma would have caused death in a living person; he just disagreed that Young was still alive when the van ran over him. Thus, the issues for the jury were credibility and timing questions about whether Young was still

20

alive when the van ran over him.  If, as Dr. Sheridan opined and as appellant argued, Young was dead before the van ran over him, the van could not have caused Young's death.  CALJIC Nos. 3.40 and 3.41 would not have given the jury any useful guidance on those issues.

Appellant's defense was not only that the gunshot wounds were the sole cause of death, but also that he was not responsible for the gunshots under the provocative act doctrine.  As appellant points out, the use note to the provocative act instruction indicates that "cause" should be defined using CALJIC No 3.40 and/or No. 3.41.  In this context, however, the required causal nexus is between the defendant's provocative act and the killing by the third party.  As appellant correctly points out, the People must prove that "defendant's conduct proximately caused the killing." (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 583.) As the *Briscoe* court further explained:  "To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.  [Citations.] A defendant's provocative acts must actually provoke a victim response resulting in an accomplice's death." (*Id.* at pp. 583--584.)

We note appellant's defense was not that his conduct failed to actually provoke Sliskovich. Rather, it was that the natural consequences of his conduct were not dangerous to human life, and so did not meet the requirements for an "intentional provocative act."  This is a foreseeability argument, and we have discussed it in Section III, *ante.*  CALJIC No. 3.40 would have advised the jury that the consequence must be "natural and probable" but as we explained above, the word "probable" is not

necessary. Thus, there is no reasonable probability or possibility that appellant would have received a more favorable verdict if CALJIC No. 3.40 had been given, or to use appellant's preferred formulation, that the absence of the instruction contributed to the verdict against appellant.

Appellant also argues that the absence of causation instructions led the jury to find appellant guilty of felony hit and run causing death but then due to leniency or the necessity defense decided to find him guilty of only the lesser included offense of simple hit and run. Appellant's leniency theory is both speculative and nonsensical, and as such it fails. As to the necessity defense, we see no relationship between the lack of a causation instruction and the necessity instruction. We discuss appellant's claims about the necessity instruction itself below.

## VII. *The Trial Court's Instruction On The Defense Of Unconsciousness Was Superfluous.*

The trial court gave the jury CALJIC No. 12.72, which explains the defense of unconsciousness to a charge of violating Vehicle Code section 20001. Appellant contends the instruction was inaccurate and incomplete because it only referred to unconsciousness caused by an accident and failed to define the term unconscious.

As appellant acknowledges, he did not request an instruction on the defense of unconsciousness and did not rely on that defense. In fact, it appears that an unconsciousness defense would have been inconsistent with his proffered defense of necessity.

Appellant contends, correctly, that a trial court has a sua sponte duty to give an instruction on unconsciousness when the evidence "indicates" unconsciousness. (*People v. Newton* (1970)

22

8 Cal.App.3d 359, 377–378.) More generally, "[i]t is well settled that a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence . . . unless the defense is inconsistent with the defendant's theory of the case." (*People v. Salas* (2006) 37 Cal.4th 967, 982.) This duty, if applicable, would have warranted a more general instruction on unconsciousness, which would have been applicable to the murder charges as well. We see no such evidence here.

Appellant was injured at the crime scene. He collapsed after driving for about 2.5 miles, but there is nothing to suggest he was "unconscious" at the crime/accident scene. Appellant appeared to act in a conscious manner—starting the van, reversing it out of its parking place, driving forward between the gates, turning in the direction of one of the other robbers, stopping the van near that robber, making some sort of contact with the robber, turning again and ending up on the Pacific Coast Highway. It is true that an unconscious person may act physically without mental awareness of his actions, but this set of facts does not "indicate" such a state. It is not reasonable to infer unconsciousness from gunshot wounds and a later collapse, particularly when that collapse occurred after driving two miles from the scene without hitting anything.

Because appellant did not rely on the defense of unconsciousness, and the evidence did not in fact support the defense, the trial court did not err in failing to define unconsciousness or in failing to give a broader or more general instruction on that defense. The instruction was superfluous.

23

## VIII. *The Trial Court Did Not Err In Instructing The Jury With CALJIC No. 2.52 On Flight After The Commission Of A Crime.*

Appellant contends there was no evidence to support an instruction on flight after the commission of the crimes, and so the trial court erred in instructing the jury on flight with CALJIC No. 2.52. He further contends the language of CALJIC No. 2.52 is improperly broad. There is sufficient evidence to support the instruction. Appellant has forfeited his claim that the instruction is too broad.

Appellant contends the only reasonable inference from the evidence is that he left the crime scene to avoid further attack, and possibly to seek medical attention. That is only one inference from the evidence. Appellant did not stop and call for help as soon as he was safely out of the parking area and out of Sliskovich's sight. This fact presents a second inference. A jury could reasonably infer appellant continued to drive after exiting the parking area because he was aware he had committed a crime and did not want to be found near the crime scene.

The trial court instructed the jury on flight using CALJIC No. 2.52.[7] This instruction is correct, and "defendant's failure to propose any modification to the instruction forfeits the claim of instructional error." (*People v. Rangel* (2016) 62 Cal.4th 1192, 1223.)

---

[7] CALJIC No. 2.52 provides: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide."

## IX. *Any Error In Instructing on the Defense of Necessity Was Not Prejudicial.*

Appellant contends the trial court erred in including the following requirement in CALJIC No. 4.43 on the defense of necessity: "The defendant reported to the proper authorities immediately after attaining a position of safety from the peril." He contends this requirement applies only to prison escape cases.[8]

No cases have expressly held that the reporting requirement is inapplicable to crimes other than prison escape, and we see no basis for such a limitation. Necessity is an extremely limited defense and "the common law necessity defense 'require[d] the individual committing the crime to report to the proper authorities immediately after attaining a position of

---

[8] CALJIC No. 4.43 provides in full: "A person is not guilty of [the] crimes of hit and run resulting in death as charged in Count 2 and Second Degree Murder when he engages in an act, otherwise criminal, through necessity. The defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the elements of this defense, namely: [¶] 1. The act charged as criminal was done to prevent a significant and imminent evil, namely, a threat of bodily harm to oneself or another person; [¶] 2. There was no reasonable legal alternative to the commission of the act; [¶] 3. The reasonably foreseeable harm likely to be caused by the act was not disproportionate to the harm avoided; [¶] 4. The defendant entertained a good-faith belief that his act was necessary to prevent the greater harm; [¶] 5. That belief was objectively reasonable under all the circumstances; and [¶] 6. The defendant did not substantially contribute to the creation of the emergency; and [¶] 7. The defendant reported to the proper authorities immediately after attaining a position of safety from the peril."

safety from the peril.' " (*People v. Mehaisin* (2002) 101 Cal.App.4th 958, 965 [considering statutory defense of necessity to child abduction charge].)

Assuming for the sake of argument the trial court erred in including the reporting requirement, there is no reasonable probability or possibility that the error contributed to the verdict against appellant, or that he would have received a more favorable verdict in the absence of the error. As the jury was correctly instructed, another requirement of the defense of necessity is that the defendant did not substantially contribute to the emergency. The jury found appellant guilty of attempted robbery, and this finding show the jury believed appellant did contribute to the emergency. On these facts and with the jury's other findings, the defense of necessity was not available.

## X.    *The Evidence Did Not Support An Instruction On The Defense of Duress.*

In a supplemental brief, appellant contends the trial court had a sua sponte duty to instruct the jury on the defense of duress. We do not agree.

A trial court is required to instruct on duress sua sponte when there is substantial evidence supporting the defense and it is not inconsistent with the defendant's theory of the case. (*People v. Powell* (2018) 6 Cal.5th 136, 164.) "Duress is available as a defense to defendants who commit a crime 'under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused.' (§ 26, subd. six; *People v. Otis* (1959) 174 Cal.App.2d 119, 124–125, [344 P.2d 342].) An essential component of this defense is that the defendant be faced with a direct or implied demand that he or she commit the charged crime. 'The defense of duress,

26

unlike the necessity justification, requires that the threat or menace be accompanied by a direct or implied demand that the defendant commit the criminal act charged.' (*People v. Steele* (1988) 206 Cal.App.3d 703, 706 [253 Cal.Rptr. 773] [duress not available as a defense when inmate escaped in response to threats of bodily injury because persons making threats did not demand that defendant escape].)  In contrast, the necessity defense is available when the defendant reasonably believed there was a threat of harm and no other means to alleviate the harm, and the harm sought to be avoided by the defendant's conduct was greater than the harm sought to be prevented by the law defining the charged offense." (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567.)

Here, there is no evidence that Sliskovich demanded appellant commit the crime of hit and run.  The defense of duress does not apply to the crime of murder (*People v. Anderson* (2002) 28 Cal.4th 767, 784), but there is likewise no evidence that Sliskovich demanded appellant kill Young.  The trial court had no duty to instruct on a duress defense.

## XI.    *Appellant Has Not Met His Burden Of Demonstrating Ineffective Assistance Of Counsel.*

Appellant contends his counsel was ineffective in failing to object to Sliskovich's testimony "narrating key portions of the shooting that he admittedly had no consciousness of."  He contends that testimony was not based on personal knowledge and so Sliskovich should not have been permitted to testify about it.  (Evid. Code, § 702.)  He also contends Sliskovich's testimony amounted to an improper lay opinion.  (Evid. Code, §§ 800, 803.)

27

Appellant has the burden of proving ineffective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) To establish such a claim, appellant must show his counsel's performance fell below an objective standard of reasonableness, and, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, at p. 694.) " ' "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " ' [Citations.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 530–531.)

"When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

Initially, appellant has forfeited much of this claim by failing to make specific arguments related to specific testimony. For example, he contends Sliskovich had no memory or awareness after he went "gray," and cites a string of pages in the reporter's transcript. The first cite is to pages 361 through 362. At those pages, Sliskovich clearly testifies he has fragments of memories about events before during and after the shooting. Appellant has not cited and we are aware of any authority barring testimony from a witness with only a partial memory of

28

events, particularly when the witness makes clear that the memories are partial.

Appellant also contends Sliskovich answered questions based only on his review of the videos and this amounted to an improper lay opinion. Appellant has not overcome the presumption that counsel's failure to object was sound trial strategy. Appellant does not discuss whether Sliskovich's narration was accurate or not. If it was accurate, defense counsel could have made a reasonable tactical decision not to object to such accurate testimony on the ground that an objection would simply highlight the testimony without gaining anything in return. If the testimony was not accurate, defense counsel could have made a reasonable tactical decision to wait and draw attention to this problem during closing argument, where he could highlight any inaccuracy or potential dishonesty. As our Supreme Court has repeatedly pointed out, " '[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel.' [Citation.]" (*People v. Avena* (1996) 13 Cal.4th 394, 442–443.)

In addition, appellant has failed to demonstrate prejudice from Sliskovich's testimony. He contends Sliskovich's testimony "bolster[ed] himself as a victim rather than an aggressor" but the "bolstering" part of Sliskovich's testimony described his emotions, thoughts, and reactions as the robbers approached him. That testimony was based on personal knowledge and not subject to the objections appellant suggests on appeal. His claim of ineffective assistance fails.

## XII. *There Is No Cumulative Prejudicial Effect.*

Appellant contends the inconsistent verdicts prevent an accurate assessment of prejudice and the numerous instructional errors and unreliable evidence combined to deprive him of a fair trial. We have found substantial evidence to support appellant's convictions under both theories proffered by the prosecution. Although we have found the trial court may have made some instructional errors, the errors were minor and not prejudicial. "The assumed errors are no more compelling when considered together." (*People v. Avila* (2006) 38 Cal.4th 491, 615.

## XIII. *Appellant's Section 667.5 Enhancement Terms Are Ordered Stricken And This Matter Is Remanded For Resentencing And for Correction Of Conduct Credits.*

Appellant contends his three 1-year enhancement terms for prior prison terms imposed pursuant to section 667.5, subdivision (b) must be stricken in light of Senate Bill No. 1361. Respondent agrees. We agree as well.

The provisions of Senate Bill No. 136l went into effect on January 1, 2020, while this appeal was pending. The revised version of section 667.5, subdivision (b) provides for a one-year enhancement only if the underlying prior conviction was for a sexually violent offense. None of appellant's prior prison terms was for such an offense. Because the amendment to section 667.5 reduces punishment, it is presumed to apply retroactively. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 314.)

Respondent contends the matter must be remanded for resentencing to permit the trial court to reconsider whether to impose the sentence for the hit and run conviction consecutively. We agree that the trial court is entitled to reconsider appellant's entire sentence.

30

Respondent contends the abstract of judgment incorrectly awards appellant 1055 days of conduct credit in addition to 1055 days of actual custody credit. Appellant was not entitled to conduct credit and the trial court did not in fact award such credit. (See *People v. Ly* (2001) 89 Cal.App.4th 44, 47 [no presentence conduct credit following murder conviction].) Because we are remanding this matter for resentencing, respondent should seek correction of the abstract in the trial court.

## DISPOSITION

The section 667.5 enhancement allegations and accompanying terms are ordered stricken and the matter is remanded for resentencing. We affirm the judgment of conviction in all other respects.

STRATTON, J.

We concur:

BIGELOW, P. J.

WILEY, J.

31

Filed 4/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B288528 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA101672) |
| v. | |
| REMONDO BELL, | ORDER CERTIFYING OPINIOIN FOR PUBLIATION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on April 9, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

BIGELOW, P. J.                STRATTON, J.                WILEY, J.